# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| DAVID MCCLOSKEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV422-246 |
| | ) | CR418-260-01 |
| | ) | |
| FLOWERS, UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

David McCloskey pleaded guilty to drug and firearm related charges in 2019. Doc. 1476 at 37; *see also* doc. 344, ¶ 1; doc. 1088 (Judgment).[1] McCloskey now asserts that his conviction for being a drug user in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3), is no longer valid after the Supreme Court reaffirmed the "individual's right to carry a handgun for self-defense outside the home" in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, ___ U.S. ___, 142 S. Ct. 2111 (2022). *See*

---

[1] The Court cites to the criminal docket in case CR418-260-01 unless otherwise noted.

1

Doc. 1469 at 2, 6-7. Thus, he moves to vacate his sentence and conviction pursuant to 28 U.S.C. § 2255.[2] *See generally id.*

## I. Background and Procedural History

The grand jury charged McCloskey in four counts of an 83-count indictment. Doc. 1476 at 3-4. On January 17, 2019, McCloskey pleaded guilty to two of the counts; he admitted being a drug user in possession of a firearm in violation of 18 U.S.C. § 922(g)(3), and he pleaded guilty to conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. *Id.* at 37; doc. 344, ¶ 1. The plea agreement included a collateral attack waiver: McCloskey entirely waived his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion, except to collaterally attack his conviction based on a claim of ineffective assistance of counsel. Doc. 344, ¶ 11(b). McCloskey signed the agreement stating he had read it and reviewed it with his attorney, and that he voluntarily agreed to it. *Id.* at 13.

---

[2] McCloskey does not appear to challenge his conviction or sentence for conspiracy to distribute methamphetamine.

The Court thereafter held a Rule 11 hearing where McCloskey stated that he understood the elements and penalties associated with his charges, doc. 1476 at 6, 18, 21, as well as the trial rights he was foregoing as a consequence of his plea, *id.* at 16-17, and the collateral attack waiver, *id.* at 29-30.  In the course of pleading guilty, McCloskey admitted to the Court that he was a methamphetamine addict and that he possessed a firearm while addicted.  Doc. 1476 at 39.  He did not file a direct appeal.  *See* doc. 1469 at 2.  Now, relying on recent Supreme Court precedent, McCloskey seeks to bypass the waiver and any procedural defaults, and he argues that the applicable statute of limitations should be tolled given what he perceives as a change in the law.

McCloskey's Motion to Vacate rests on four grounds, all arising from the *Bruen* decision.  He asserts that (1) the statute he was convicted under is "now unconstitutional;" (2) a person who uses drugs is protected under the Second Amendment's plain text; and (3)/(4) the right to bear arms is not a second class right but a constitutional right, and that while legislatures have the power to prohibit dangerous people from possessing guns, he was not deemed a dangerous or violent citizen and therefore the

regulation prohibiting his possession of the gun is unjustified. Doc. 1469 at 6-9.

Respondent filed a Motion to Dismiss on March 8, 2023. Doc. 1480. In addition to summarizing the *Bruen* decision and arguing that it does not supersede or erode an 18 U.S.C. § 922(g)(3) conviction for being a drug user in possession of a firearm as unconstitutional, Respondent argues that McCloskey's § 2255 motion is untimely, procedurally defaulted, and that McCloskey waived the collateral attack relevant thereto. *See generally*, Doc. 1480.

McCloskey failed to timely respond to the Motion to Dismiss, thus the Court entered an Order to Show Cause why the Motion should not be granted as unopposed. Doc. 1481. McCloskey filed his Response on May 9, 2023, wherein he also notified the Court that he had experienced a significant medical event for which he allegedly received inadequate care. Doc. 1482 at 11. McCloskey's tardiness is excused, but to the extent he seeks relief for the lack of medical care he alleges, his allegations are not properly asserted in this § 2255 case. *Skinner v. Switzer*, 562 U.S. 521, 535 n.13 (2011); *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). In any event, the Respondent's Motion to Dismiss is due to be granted.

4

## II. Legal Standard

A prisoner is entitled to relief under § 2255 if (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *accord McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). In other words, "relief under § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (cleaned up); *see also United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge will not do service for an appeal."). If a court grants a § 2255 claim, the court "shall vacate and set aside the judgment and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The movant bears the burden of proving his § 2255 claim. *See Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) ("We rest our

conclusion that a § 2255 movant must prove his [claim] on a long line of authority holding that a § 2255 movant bears the burden to prove the claims in his § 2255 motion." (cleaned up)).

### III. Discussion

McCloskey advances multiple "grounds" in his Motion to Vacate, but they appear to elaborate on the same argument: the alleged effect of *Bruen* on the validity of his conviction under 18 U.S.C. § 922(g)(3). He argues that his conviction under 18 U.S.C. § 922(g)(3) is unconstitutional because, as a nonviolent offender, he is a part of the "people," as defined by the Second Amendment despite his drug use, and therefore his right to possess a gun should have never been restrained. *See generally*, doc. 1469. The Respondent argues that McCloskey's Motion is procedurally defaulted, untimely, and that he waived his right to collaterally attack the conviction in his plea agreement. *See generally*, Doc. 1480. Respondent additionally argues that his Motion to Vacate fails on the merits and that § 922(g)(3) remains unaltered by *Bruen*.

A. *Waiver of Collateral Attack and Procedural Default*

McCloskey signed a collateral attack waiver containing an exception allowing him to bring a claim of ineffective assistance of

counsel, doc. 1480 at 2 (citing Doc. 344 ¶ 11(b)). McCloskey mentions in passing that his attorney was "in fact ineffective by not arguing the fact that this illegal drug use did not permanently bar him from possession of a firearm for self-defense," and that his "claims are constitutional and has resulted in a miscarriage of justice," and therefore they satisfy the prejudice prong of the *Strickland v. Washington* test, but he provides no support for this assertion. *See* doc. 1482 at 2 (citing *Strickland v. Washington,* 466 U.S. 668 (1984). Even though his argument is undeveloped, the Respondent failed to address why the waiver should apply, given McCloskey's ineffective assistance of counsel argument. Thus, though the Court fully acknowledges that collateral attack waivers are indeed enforceable, *King v. United States*, 41 F.4th 1363, 1367 (11th Cir. 2022), the ambiguity concerning the application of the exception contained in McCloskey's waiver mandates that the Court reach the merits of Respondent's Motion to Dismiss.

    B. *Timeliness and Merits*

The Antiterrorism and Effective Death Penalty Act ("AEDPA") established a one-year statute of limitations for § 2255 motions. 28 U.S.C. § 2255(f); *Davenport v. United States,* 217 F.3d 1341, 1343 (11th

Cir. 2000). A § 2255 motion is timely if it is filed within one year of the latest of four possible triggering dates. 28 U.S.C. § 2255(f). There are two potential triggering dates relevant to this case. First, and as Respondent argues, the one-year period began on the date which McCloskey's judgment of conviction became final and ended on August 17, 2020. *See* doc. at 7 (citing 28 U.S.C. § 2255(f)(1)). Second, and as McCloskey argues, the relevant date is "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3). In the latter case, if *Bruen* created a new right that is retroactively applied to abrogate § 922(g)(3), McCloskey's Motion is timely under § 2255(3) because it was filed within one year of *Bruen*. *See* doc. 1469 (filed Jan. 6, 2023).

The threshold issue for determining whether McCloskey's motion is timely is whether *Bruen* recognized a new right relevant to § 922(g)(3). However, nothing about Congress's ability to keep firearms out of the hands of drug users was explicitly decided or otherwise disturbed in *Bruen*. *Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("[T]oday's decision therefore holds that a State may not enforce a law . . . that

8

effectively prevents its law-abiding residents from carrying a gun for [a lawful] purpose. That is all we decide."). Instead, in finding an unrelated New York firearm regulation unconstitutional, *Bruen* established the framework to analyze the Second Amendment's limits, defining the standard for applying the Second Amendment as follows: "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. To justify regulation of such conduct, "the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation." *Id.* Only then "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2129–30 (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961).

Of course, this framework contemplates a direct attack on the statute and not collateral attack review. Nevertheless, McCloskey argues that there is no historical tradition of regulating nonviolent drug users' possession of firearms, and thus *Bruen*'s new framework necessarily abrogates § 922(g)(3) thereby effectively recognizing a new

9

right for drug users to possess firearms. However, district courts throughout the Eleventh Circuit and elsewhere have confirmed § 922's continued constitutionality generally. *See, e.g., Leonard v. United States*, 2023 WL 2456042, at *10 (S.D. Fla. Mar. 10, 2023) (collecting cases interpreting the constitutionality of § 922(g)(1) after *Bruen*); *c.f., United States v. Hunter*, 2022 WL 17640254, at *6 (N.D. Ala. Dec. 13, 2022) (denying motion to dismiss indictment under § 922(g)(1) and thoroughly examining and confirming the viability of Eleventh Circuit precedent upholding § 922). *Bruen* itself confirmed that the Second Amendment protects *law-abiding citizens*. *Bruen*, 142 S. Ct. at 2156 ("New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents *law-abiding citizens* with *ordinary self-defense needs* from exercising their right to keep and bear arms." (emphasis added)); *id.* at 2162 (Kavanaugh, J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations.").

Additionally, another district court found no distinction between violent crime and non-violent crime when examining whether firearm regulation is authorized. O*rrego Goez v. United States*, 2023 WL 2045970, at *2-*3 (S.D. Fla. Feb. 16, 2023). Instead, the court held that

10

the question rests on whether the regulation targets the possession of firearms by those who use them to further an *illegal* act. *See generally, id.* (Denying § 2255 motion and finding conviction under §924(c), prohibiting possession of firearm in furtherance of drug trafficking crime, constitutional under *Bruen*) (citing *District of Columbia v. Heller*, 554 U.S. 570, 595(2008)). As Respondent rightly notes, McCloskey's mere addiction at the time of his possession was not penalized; he was charged as an "unlawful user" who also possessed a firearm and not simply as an addict. *See* doc. 1480 at 18-19 n. 11 (citing *United States v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010)); *see also* doc. 4 at 73. Thus, McCloskey's argument that the regulation is unauthorized because there is no underlying violent act justifying it, or that his addiction is being unfairly regulated, lacks merit. *See* doc. 1482 ("Movant is a part of the 'people' despite his drug use.").

Relatedly, the Court is aware of at least one district court case from Missouri holding that § 922(g)(3), the specific subsection under which McCloskey was convicted, is presumptively lawful even after *Bruen* because *Bruen* did not overrule longstanding precedent that "certain citizens should be 'disqualified' from keeping or bearing arms under the

11

Second Amendment." *See Gilpin v. United States*, 2023 WL 387049, at *4 (W.D. Mo. Jan. 3, 2023) (citing *Heller*, 554 U.S. at 635). Likewise, the Eleventh Circuit recently approved a Florida regulation prohibiting the sale of firearms to 18–20-year-old individuals without deciding, but assuming, they remained within the class of "people" whom the Second Amendment protects, suggesting that even if it is not clear whether a drug user remained in the class of "'the people' whom the Second Amendment protects," firearm regulation against even law-abiding citizens may be constitutional. *Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1325 (11th Cir. 2023). Thus, even if McCloskey is in the class of "the people" whom the Second Amendment protects, regulation may be justified. Consequently, the Court sees no reason to conclude that a new right has been recognized by *Bruen* in any context relevant to McCloskey.

Next, to determine whether McCloskey's Motion is timely, the Court must consider whether the right was made retroactive. 28 U.S.C.A. § 2255. The Eleventh Circuit examined the retroactivity of *Bruen* in a different context in *In re Williams*, 2022 WL 18912836 (11th Cir. Dec. 15, 2022). There, it held that *Bruen* should not be retroactively applied to allow a successive motion to vacate a petitioner's conviction for

being a felon in possession of a firearm pursuant to 28 U.S.C. § 2255(h)(2).[3] *Id.* at *2. Other unpublished opinions cited by the Respondent deny leave to file successive motions in the same or similar context. *See* doc. 1480 at 8 (citing *In re Felix*, No. 22-12661, doc. 2 (11th Cir. Aug. 22, 2022) (conviction under 18 U.S.C. § 922(g)(1), prohibiting convicted felons from possessing a firearm); *see also id.* (citing *In re Barbieri*, No. 23-10428, doc. 2 at *4-*5 (11th Cir. Feb. 27, 2023) (conviction under 18 U.S.C. § 922(k), prohibiting possession of a firearm with an altered serial number)). Although the Court has not uncovered precedent specifically finding that *Bruen* does not retroactively apply to undermine § 922(g)(3) convictions in a § 2255 motion to vacate, an exact analogy is not necessary to find McCloskey's Motion untimely because the Supreme Court did not recognize a new right in *Bruen* or apply said

---

[3] Similar to the standard at issue here, 28 U.S.C. § 2255(h) allows authorization of a successive motion to vacate if the successive motion contains a claim involving, *inter alia*, a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable. Under subsection 2 of § 2255(h), a new rule of constitutional law applies retroactively to criminal cases that became final before the rule was announced only if that rule falls within one of two narrow exceptions: (1) new substantive rules; or (2) a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *In re Hammoud*, 931 F.3d 1032, 1037 (11th Cir. 2019). However, in the case of successive petitions, the retroactivity determination must be made by the Supreme Court while here, § 2255(f)(3) is silent as to who must make the retroactivity determination.

13

right retroactively. Thus, McCloskey's Motion is untimely. Respondent's Motion to Dismiss may be granted on this basis alone.

Yet, even if his motion were timely, it would be due for dismissal because § 922(g)(3) "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. 2127. While it was not until 1968 that Congress barred habitual drug users from possessing guns, *see* Gun Control Act of 1968, Pub. L. 90-618, § 102, 82 Stat. 1213, 1220, cases such as this, which "implicat[e] unprecedented societal concerns . . . may require a more nuanced approach" than finding an exact analogy. *Bruen*, 142 S. Ct. at 2132. *Bruen* addressed the difficulty in applying "the Second Amendment's historically fixed meaning" to new circumstances. In doing so, it recognized a dichotomy which exists between problems that have persisted since the 18th century and those "modern regulations that were unimaginable at the founding." *Id.*

McCloskey correctly notes "our nation's long history of people using substances that might intoxicate or impair judgment." Doc. 1482 at 5. He argues that there is no historical prohibition on the possession of firearms by those intoxicated persons and maintains that the "societal problem addressed by § 922(g)(3) . . . is not new." *Id.* Accordingly, he

14

argues that the framework used by Respondent is improperly relied upon: it has used "analogical reasoning utilized when examining regulations aimed at a novel societal problem," even though possession of firearms by intoxicated persons, in his opinion, is not a novel societal problem. Consequently, in McCloskey's opinion, the lack of regulation in the past of what he argues is a preexisting problem necessarily demands that § 922(g)(3) is unconstitutional. *Id.*

Indeed, the Supreme Court explained that "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a *distinctly similar* historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131 (emphasis added); c*ompare id*. at 2132 ("[D]etermining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are '*relevantly similar*.'" (emphasis added)). The Court need not decide today whether the challenged regulation here addresses a "general societal problem that has persisted since the 18th century," as McCloskey asks it to do. Doc. 1482 at 5. Other pre-*Bruen* courts have

15

gone to great length to investigate the historical versus modern need for prohibiting criminals from carrying firearms. *See, e.g.*, *Yancey*, 621 F.3d at 684-685. Here, whether the unlawful drug-user in possession problem is properly considered "distinctly modern," or not, analogous historical regulations do exist. *See Bruen*, 142 S. Ct. at 2126.

While the *Bruen* decision advised courts to refrain from means-end scrutiny, it pointed to two metrics for determining whether historic regulations are relevantly similar to modern ones: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S. Ct. at 2133 ("[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry." (citations omitted)). As to this point, McCloskey argues that the analogous laws presented by the Respondent are not like § 922(g)(3). He is not wrong in asserting the difficulty of finding an exact analogue of § 922(g)(3) as compared to the other § 922(g) subsections which penalize violent or dangerous offenders, *see* doc. 1469 at 7-8 ("[L]egislatures have the power to prohibit dangerous people from possessing guns. But that power extends only to people who

16

are dangerous . . . I had not been deemed at the time a dangerous or violent citizen."), or in noting the difficulty in analyzing the limits of the Second Amendment, generally, *see* doc. 1482 at 6-7 (criticizing defining "the people" as "law abiding" because it requires the type of interest balancing *Bruen* rejected). The issue appears to be that, while a corollary to one aspect of this regulation—possession of firearms by felons—is commonly found, the other aspect—being an unlawful drug user—has arguably fewer historical counterparts. However, though prior generations did not regulate possession by drug users in the precise manner regulated today, earlier generations did not address the societal problem of drug users possessing guns through "materially different," nonregulatory means either.[4] In other words, just because the regulation of drug use has increased over time, the Court is not precluded from finding the firearm regulation wholly valid.

In the Court's view, the prohibition *is* both "distinctly" and "relevantly" analogous to disarming felons, a regulation which has been

---

[4] The Supreme Court provided additional advice that, "if earlier generations addressed the problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Bruen*, 14 S. Ct. at 2131. McCloskey provides no example of earlier generations addressing this problem through materially different means.

17

repeatedly confirmed again and again based on historical analysis. *See U.S. v. Meyer*, 2023 WL 3318492, at *3 (S.D. Fla. May 9, 2023) ("*[E]very federal judge* who has considered this question since *Bruen* has upheld the continued validity of § 922(g)(1)," the felon in possession statute.). Or, similarly, the regulation is comparable to prohibiting the mentally ill from possessing guns, an exclusion endorsed as presumptively valid in both *Heller* and *McDonald*, neither of which have been overturned. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010); *Heller*, 554 U.S. at 626. Indeed, "habitual drug abusers, like the mentally ill, are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms." *Yancey*, 621 F.3d at 685. This remains true even though drug use was not regulated in a way to provide the exact corollary McCloskey seeks. The burden imposed by these historical regulations is comparable to that contained in § 922(g)(3), and the justifications for that burden are comparable as well. *Bruen*, 142 S. Ct. at 2133.

Accordingly, even if *Bruen* modified the law in a manner which recognized a new right relevant to McCloskey's conviction which was then made retroactive to excuse his untimely motion, he would still not

be entitled to relief because § 922(g)(3) remains constitutional after *Bruen*. For this reason, his motion is both untimely and fails on the merits. Therefore, it is **RECOMMENDED** that Respondent's Motion to Dismiss be **GRANTED,** and McCloskey's Motion to Vacate should be **DENIED**.

Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant") (emphasis added). This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for

additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED, REPORTED, AND RECOMMENDED** this 1st day of June, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA